METROPOLITAN LIFE INSURANCE
COMPANY, Petitioner,
v.
NATIONAL LABOR RELATIONS
BOARD, Respondent.

No. 16761.

United States Court of Appeals
Sixth Circuit.

Decided April 3, 1967.

Edwards, Circuit Judge, dissented.

Burton A. Zorn, Proskauer, Ross, Goetz
& Mendelsohn, New York City, Harry E.
Marble, John H. Marble, Marble & Vor-
denberg, Cincinnati, Ohio, Thomas F.
Delaney, Associate Gen. Counsel, Metro-
politan Life Ins. Co., New York City, for
petitioner.

Arnold Ordman, Gen. Counsel, Domi-
nick L. Manoli, Associate Gen. Counsel,
Marcel Mallet-Prevost, Asst. Gen. Coun-
sel, Gary Green, Clarice Feldman, Attys.,
N. L. R. B., Washington, D. C., for re-
spondent.

Before EDWARDS and CELE-
BREZZE, Circuit Judges, and TAYLOR,
District Judge.

ROBERT L. TAYLOR, District Judge.

The National Labor Relations Board
filed with the Court a petition for re-
hearing en banc to reconsider the deci-
sion issued on January 6, 1967 denying
enforcement of the Board's order.

A hearing en banc was denied by a
majority of the members of the Court.
The petition was referred to the panel
who heard the case for decision.

Petitioner (hereinafter called the
Board) asserts that erroneous reviewing
standards were applied by a majority

of the panel and that the case was decided contrary to settled law. We do not agree.

A detailed statement of the facts was made in the majority and dissenting opinions. These facts show that Nunnally was an unstable and discontented employee, whose sales production record declined substantially from 1960 to 1963 and reached a point 30% to 40% less than the company average for the Detroit area, the area in which he worked.

Substantial evidence is lacking to show that Pate was moved by union animosity in refusing to re-employ him or that the alleged statement made by Speyer to him on December 12 that if he had signed a union card he would never come back to work for Metropolitan interfered, restrained or coerced him in the exercise of the rights guaranteed to him under Section 7 of the National Labor Relations Act.

Petitioner asserts that the majority of the Court chose between two conflicting lines of testimony contrary to the choice made by the Trial Examiner and the Board in the absence of unusual considerations in reaching their conclusion that there was no substantial evidence to support the findings and conclusions of the Examiner and the Board.

In support of this contention, it is asserted that General Counsel's witnesses had shown that Speyer, the Company's district manager, once told Nunnally that he could never come back to work if he had signed a union card and that Pate learned that he had signed a union card in 1962 and that Pate had expressed strong views about the union in 1962; that Pate stated that he refused Nunnally's request for re-employment in 1964 because of "attitudes and personal problems" although other company officials, who were familiar with Nunnally's work record, had recommended that he be rehired; that Pate testified at the Board hearing that he decided not to rehire solely because of legitimate considerations unrelated to Nunnally's union activities.

The alleged conversation between Nunnally and Speyer that occurred on December 12, 1963 was discussed in the majority opinion in detail. Nunnally stated that he was asked by Speyer how he felt about the Union and that he told him he was for the union and was an observer in the last union election; that he told him he didn't sign a union card as he was in Alabama when the cards were passed around and Speyer told him if he had signed one he would never come back to work for Metropolitan.

The Board contends that the statement of Speyer that if he had signed a union card he would never come back to work represented company policy and that Pate knew that Nunnally had signed a union card in 1962 and that this alleged fact entered into Pate's decision not to rehire Nunnally. Speyer denied the statement. Nunnally also stated that he told Speyer that he had supported the union, was for the union and had voted for it and served as a union observer in a union election.

But Speyer supported Nunnally's application for re-employment. Dietz, one of Pate's assistants, Greenstein, Nunnally's former manager, Knight, manager at Metropolitan's office in Alabama under whom Nunnally worked, all recommended the rehire of Nunnally. It does not seem reasonable that if the Company had a policy not to rehire employees who had signed a union card that all of these men, holding managerial positions, would run the risk of incurring disfavor with higher officials of the Company by violating its policy by recommending Nunnally.

Although Nunnally says that he freely revealed to Speyer his pro-union attitude, he stated that he lied to him about signing the union card.

The Board concedes that the Examiner erroneously found that Speyer changed his statement that he did not ask Nunnally about signing the card during the December 12 interview, and to this extent the Trial Examiner misconstrued a portion of Speyer's testimony.

The Examiner called attention to the delay of the Company in processing Nunnally's application for transfer to Alabama, but the Board's General Counsel stipulated during the hearing that he attached no ulterior motive to the Company in the delay. There was a colloquy between Mr. Lichtenstein, representing petitioner, and Mr. Fischer, General Counsel. The import of the colloquy, and this was admitted in so many words by Mr. Fischer, was that no inference was to be drawn from the fact that there had been eight or nine months delay in transferring Nunnally to Alabama. Nevertheless, in his decision, the Trial Examiner ignored Mr. Fischer's admission and apparently attributed the transfer to Alabama to the fact that that area was unrepresented by a union. And he supported this conclusion with a footnote setting forth certain inconsistencies in Mr. Pate's testimony.

We do not understand why the Examiner made so much of these facts with the approval of the Board when the Board's General Counsel at the hearing indicated that the delay was only a matter of procedure. This stipulation apparently satisfied the Examiner on this point. This substantial inadvertence of the Trial Examiner with reference to one situation raises substantial doubts as to his final conclusion.

These matters are pointed out to show that the Examiner made an erroneous finding to support his conclusion that Pate was motivated by union animosity in his decision. There is no testimony in the record that disproves the positive swearing of Pate that he was not moved by union animosity in refusing to employ Nunnally. The Board in its petition intimates that this conclusion gives more veracity to the swearing of witnesses for the employer than the swearing of the employee and that the oath of an employee should be worth as much as the oath of witnesses for the employer. This depends upon the character of the witnesses for the employer and the character of the employee, as well as other factors. There is no testimony that contradicted Pate in this respect. The contrary findings of the Board and Examiner were based, at most, upon erroneous inferences, if not upon suspicion.

Pate, before making his decision not to rehire, reviewed Nunnally's personal file. He had before him an inter-office memorandum from Dietz, which mentioned Speyer's recommendation of Nunnally, but added "I am told that this Agent while in Eastgate, was to say the least, refractory."

Nunnally wrote Pate for the reasons of his refusal to re-employ him and on January 23 Pate replied and pointed out his (Nunnally's) "attitude and personal problems" and concluded that he was not suited for the career of a "dedicated Life Underwriter." He stated unequivocally that his decision to not rehire Nunnally was based upon Nunnally's poor production, his constant complaining, his instability and marital difficulties.

The Board claims that Pate's testimony contains a number of contradictions, one of which was that he refused to re-employ Nunnally because of his poor production record, yet his supervisors favored the rehiring of him. Further, that his (Nunnally's) personal problems "also prevented his being rehired" explaining that he had in mind his divorce, and at that time Nunnally had remarried his former wife, of which Pate had knowledge. We do not agree that the testimony of Pate was contradictory but if in error as to this, in our opinion it was not contradictory to the extent as to discredit it.

We think the language used by the late Mr. Justice Frankfurter in the landmark case of Universal Camera Corp. v. National Labor Relations Board, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456, is pertinent to our case.

"We conclude, therefore, that the Administrative Procedure Act and the Taft-Hartley Act direct that courts must now assume more responsibility for the reasonableness and fairness of

Labor Board decisions than some courts have shown in the past. Reviewing courts must be influenced by a feeling that they are not to abdicate the conventional judicial function. Congress has imposed on them responsibility for assuring that the Board keeps within reasonable grounds. That responsibility is not less real because it is limited to enforcing the requirement that evidence appear substantial when viewed, on the record as a whole, by courts invested with the authority and enjoying the prestige of the Courts of Appeals. The Board's findings are entitled to respect; but they must nonetheless be set aside when the record before a Court of Appeals clearly precludes the Board's decision from being justified by a fair estimate of the worth of the testimony of witnesses or its informed judgment on matters within its special competence or both." p. 490, 71 S.Ct. p. 466.

The Board contends that the Court erred in failing to hold that the language allegedly used by Speyer that Nunnally "would never return back to work for Metropolitan if he had signed a union card" was coercive and, therefore, interfered with Nunnally's rights under Section 7 of this Act.

■ This statement was allegedly made on December 12, 1963. At that time Nunnally was not an employee of the Company but was seeking re-employment. The union was not engaged in organizational activities. We are unable to see how such a statement could be coercive on company employees. We are of the opinion that the statement, if made, was not coercive within the meaning of the Act.

■ Upon consideration of the record as a whole, we are of the opinion that the order of the Board is not supported by substantial evidence. It is, therefore, ordered that the petition for rehearing and the request for a decree enforcing the Board's order be, and same hereby are, denied.

EDWARDS, Circuit Judge (dissenting).

I believe that rehearing of this case should be granted for the reasons stated in my dissenting opinion in Metropolitan Life Ins. Co. v. National Labor Relations Board, 371 F.2d 573 (C.A.6, 1967).